# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| MACON COUNTY, ILLINOIS, ) <br> by and through JACK W. AHOLA, ) <br> STATES ATTORNEY FOR MACON ) <br> COUNTY, and MARY A. EATON, ) <br> MACON COUNTY RECORDER OF ) <br> DEEDS, ) <br> ) <br>               Plaintiffs, ) <br> ) <br>   v. ) <br> ) <br> MERSCORP, INC., MERSCORP ) <br> HOLDINGS, INC., MORTGAGE ) <br> ELECTRONIC REGISTRATION ) <br> SYSTEMS, INC., BANK OF AMERICA, ) <br> N.A., CITIMORTGAGE, INC., CREDIT ) <br> SUISSE FINANCIAL CORP., HSBC ) <br> FINANCE CORPORATION, EVERHOME ) <br> MORTGAGE COMPANY, JPMORGAN ) <br> CHASE BANK, STATE FARM BANK FSB, ) <br> WELLS FARGO BANK, N.A., and ) <br> JOHN DOE DEFENDANTS 1-100, ) <br> ) <br>               Defendants. ) | Case No. 12-2214 |

## REPORT AND RECOMMENDATION

      Plaintiffs Macon County, Illinois, and Mary A. Eaton, Macon County Recorder of Deeds, filed a class action complaint in the Circuit Court for the Sixth Judicial Circuit, Macon County, Illinois, against Defendants Merscorp, Inc., *et al*. In August 2012, Defendants removed the case to federal court (Notice of Removal, #1), alleging federal jurisdiction based on diversity pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1441, and 28 U.S.C. § 1453. Plaintiffs subsequently filed an Amended Class Action Complaint (#34). In November 2012, Defendants filed a Joint Motion To Dismiss Plaintiffs' Amended Class Action Complaint (#36). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. §

1

636(b)(1)(B), that Defendants' Motion To Dismiss Plaintiffs' Amended Class Action Complaint **(#36)** be **GRANTED**.

## I.  Background

Plaintiffs Macon County and Mary Eaton, Macon County Recorder of Deeds, filed this putative class action on behalf of Macon County and other similarly-situated counties in the State of Illinois.

Defendants include Mortgage Electronic Registration Systems, Inc. (MERS), and its parent company, Merscorp, Inc., the owner and operator of a national registry that tracks ownership interest and servicing rights associated with residential mortgage loans. Defendants also include shareholders of Merscorp as well as various mortgage companies and John Doe Defendants who are alleged to be members of MERS (Member Defendants). Plaintiffs' amended complaint alleges claims of unjust enrichment and civil conspiracy, and requests for declaratory judgment and injunctive relief.

Plaintiffs' original complaint alleged that the Illinois recording statute, 765 ILCS 5/28, mandates recording of all mortgage assignments and that Defendants violated that statute by failing to record mortgage assignments among MERS members. The amended complaint has abandoned the position that Illinois law mandates recording and instead alleges that Illinois law encourages the recording of land instruments. (Amended Class Action Complaint, #34, ¶ 49.)

The amended complaint explains how the MERS system works, alleging that MERS members record initial mortgages naming MERS as the "nominee for the lender and the lender's successors and assigns," thereby perfecting the mortgages and ensuring first-lien priority. (#34, ¶ 5.) The mortgage is then registered on the MERS system. If the MERS member/lender subsequently assigns the mortgage to another MERS member, the mortgage note is transferred to the subsequent lender within the MERS system, but MERS remains the holder of the security interest and the beneficiary of record for both the lender and the transferee. These transfers or mortgages between MERS members, called "intermediate" transfers (#34, ¶5), are not recorded

in the county land records; however, if the loan is transferred to a lender who is not a MERS member, that transfer is recorded in the county records.

## II.  Standard

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To state a claim under federal notice pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The complaint must give fair notice of what the claim is and the grounds upon which it rests. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007).  However, fair notice is not enough by itself; the allegation must show that it is plausible—not merely speculative—that the plaintiff is entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

The Seventh Circuit summarized the notice pleading analysis in *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  First, a plaintiff must provide notice to defendants of her claims. *Id.* Second, courts must accept a plaintiff's factual allegations as true, unless the factual allegation is so sketchy or implausible that it fails to provide sufficient notice to defendants of the plaintiff's claim. *Id.*  Third, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements when considering a plaintiff's factual allegations. *Id.*  Indeed, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the nonmoving party. *McMillan v. Collection*

*Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl.*, 550 U.S. at 556 (requiring plausible grounds for inferences if those inferences are to sustain a complaint). A claim is sufficient only to the extent that it contains either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. *Bell Atl.*, 550 U.S. at 562 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Legal conclusions, unsupported by allegations of underlying facts, are not entitled to the "assumption of truth." *Iqbal*, 556 U.S. at 680-81; *see Papasan v. Allain*, 478 U.S. 265, 268 (1986) (stating that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Finally, a plaintiff can allege himself out of a claim by including allegations that establish his inability to state a claim. *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 801-02 (7th Cir. 2000); *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (stating that a plaintiff can plead himself out of court by alleging facts that undermine the validity of his claim).

Similarly, in ruling on a motion to dismiss for lack of standing, the Court must accept as true all material allegations of the complaint and must draw all reasonable inferences in favor of the plaintiff. *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996) (citing *Warth v. Seldin,* 422 U.S. 490, 501 (1975)).

### III. Analysis

Defendants argue that the Court should dismiss the complaint for the following reasons. First, Defendants contend that Plaintiffs lack standing. Second, Defendants contend that Plaintiffs' unjust enrichment claim fails because Defendants had no legal duty to record assignments under Illinois statute or under any private securitization agreements. Third, Defendants contend that the remaining claims derive from the unjust enrichment claim and because the unjust enrichment claim fails, the derivative claims also fail.

#### A. Motion To Dismiss for Lack of Standing

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here, Defendants invoked federal jurisdiction by removing the case from state court to federal court. *See Morgan*

*v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006) (stating that *Lujan* established that the party removing a case to federal court bears the burden to establish jurisdiction). Perplexingly, Defendants now challenge the constitutional standing of the claims even though they have the burden to establish standing. Clearly Defendants have failed to establish standing in this case, as they, in fact, argue that Plaintiffs lack standing.[1] However, Plaintiffs have responded to Defendants' argument rather than seeking remand to state court. Furthermore, standing implicates the Court's subject matter jurisdiction, and the Court is "obligated to consider the issue of standing, like any other question implicating our Article III jurisdiction, whether or not the parties have raised it." *Brown v. Disciplinary Comm. of Edgerton Volunteer Fire Dep't*, 97 F.3d 969, 972 (7th Cir. 1996). Therefore, the Court will now consider the issue of standing.

To have standing under Article III (U.S. CONST. art. III, § 2), a party must show the existence of: (1) "an injury in fact which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual and imminent, not conjectural or hypothetical"; (2) "a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant"; and (3) "a likelihood that the injury will be redressed by a favorable decision" of the court. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

The Court also notes that the absence of a *valid* claim does not implicate subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("[t]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."). Jurisdiction is not defeated by the possibility that the allegations might fail to state a claim on which petitioners could

---

[1]Even if Defendants were correct that Plaintiffs lack standing, the result would be remand to state court, not dismissal. *See Maine Ass'n of Interdependent Neighborhoods v. Comm'r,* 876 F.2d 1051, 1054 (1st Cir. 1989) (lack of standing is jurisdictional requiring remand); *Wheeler v. Travelers Ins. Co*., 22 F.3d 534, 540 (3rd Cir. 1994) ("Our conclusion does not require us to dismiss the case, for a determination that there is no standing does not extinguish a removed state court case.").

recover unless the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974).

Defendants argue that Plaintiffs lack standing because they have suffered no cognizable injury. Specifically, Defendants contend that (1) Plaintiffs suffered no economic injury because Plaintiffs' allegations indicate that Plaintiffs have not performed any uncompensated work, and (2) Plaintiffs suffered no injury due to the gaps in the chain of title because Plaintiffs' role in recording documents is purely ministerial and any potential injury resulting from those gaps would affect creditors and purchasers of property rather than Plaintiffs.

Here, Plaintiffs allege that they suffered an injury to Macon County's financial interest due to lost recording fees and an injury in the form of inaccurate county land records, both caused by Defendants' actions. Therefore, Plaintiffs have arguably stated a claim based on cognizable injury that Plaintiffs allege Defendants caused. A favorable decision by the Court would redress the alleged injuries. These allegations are sufficient to establish Article III standing.

### B.  Motion To Dismiss for Failure To State a Claim

**1.    Count I:  Unjust Enrichment**

**a.    The elements of an unjust enrichment claim**

Under Illinois law, a claim for unjust enrichment exists when: (1) a defendant receives a benefit; (2) to the plaintiff's detriment; and (3) the defendant's retention of that benefit would be unjust. *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.,* 153 F.3d 822, 828 (7th Cir. 1998) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989)). The parties disagree as to whether an unjust enrichment claim requires an underlying claim of wrongdoing.[2] For purposes of this motion, the Court adopts Plaintiff's position that an unjust

---

[2] Plaintiffs argue that unjust enrichment can stand as an independent claim without any underlying claim of wrongdoing (i.e., tort, breach of contract, or statutory violation). *See HPI*

enrichment claim does not require an underlying claim of wrongdoing because, even under this more lenient standard, Plaintiffs fail to state claim for unjust enrichment.

Because Plaintiffs do not need to establish the existence of an independent duty in order to state a claim for unjust enrichment, they contend that Defendants' focus on the issue of whether there is a legal duty to record the intermediate transfers is misplaced. (#41, p. 41.) Plaintiffs describe the essence of their claims as follows:

> [U]nder the MERS model, members record initial mortgages for the specific purpose of parlaying the first lien status granted thereby into a "free ride" by not paying recording fees during the multiple times a mortgage is assigned on the MERS System. . . . Plaintiff's unjust enrichment and other claims . . . allege

---

*Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989) ("To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."); *Raintree Homes v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004) ("If the plaintiff has *no* substantive claim grounded in tort, contract, or statute, then if the plaintiff's claim is viable at all, it *must* be one for restitution to prevent unjust enrichment." (citing 1 D. Dobbs, Remedies § 4.1(1), 555-56 (2d ed. 1993))).

In contrast, Defendants rely on a recent Illinois appellate court case that suggests the opposite:

> Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct.
> . . . .
> For a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty. A plaintiff fails to state a cause of action for unjust enrichment absent an allegation of duty.

*Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 3d 2009) (internal citations and quotation marks omitted). After considering the conflicting language of these cases, the Seventh Circuit court stated that "*Martis's* articulation of unjust enrichment law might be viewed as language limited to its particular facts and not a true variance from how the Illinois Supreme Court considers unjust enrichment claims as illustrated by *Raintree Homes*." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011), reh'g and suggestion for reh'g en banc denied (Nov. 15, 2011). However, the court declined to resolve the question of whether Illinois law recognizes unjust enrichment as an independent cause of action. *Id.*

>instead that:
>>But for the existence of the MERS System, MERS Members would have recorded such transfers and paid the applicable recording fees because they knew that recording security instruments, including mortgage assignments, is the only way to fully inoculate security interests from claims by subsequent purchasers for value without notice. (Plaintiff's Amended Complaint, #34, ¶ 140.)

(#48, p. 4.) Plaintiffs also expressly state that their allegations are "centered on Defendants' unjust retention of the priority conferred by recordation – *not* [on] a 'duty' to record." (Opposition to the Motion To Dismiss, #41, p. 42, quoting the amended complaint #34, ¶¶ 57-62.) Plaintiffs unequivocally state that their "claims are in no way dependent on the existence of some affirmative duty to record assignments, whether contractual, statutory, or otherwise." (#41, p. 40.) Plaintiffs also state that the County is not suing to enforce any statute (#41, p. 35) and that they do not argue that Defendants had a duty to act based on the language of the securitization contracts; they refer to the contracts only to demonstrate how Defendants profit from the MERS System (#41, p. 40).

With this background in mind, the Court now focuses on the allegations of unjust enrichment in the complaint.

**b.     The allegations of the unjust enrichment claim**

The gist of Plaintiffs' unjust enrichment claim is found in the following paragraphs:

>144. Further, Defendants' wrongful conduct in creating and implementing the MERS System to avoid the recording of fees[3] while still using the priority conferred by 765 ILCS 5/30 prevented Plaintiff and other Class members from recording assignments and charging the applicable recording fees on such recordations. Thus, Defendants unjustly retained a benefit to the detriment of Plaintiff and other Class members.
>145. Under the circumstances, it is against justice, equity and good conscience to permit Defendants to retain the benefits arising out of or resulting from naming

---

[3]Presumably, Plaintiffs meant to say "to avoid the payment of recording fees." See, for example, paragraph 138 of the amended complaint, which begins, "In order to avoid the payment of recording fees." (#34, ¶ 138.)

>MERS as mortgagee and/or grantee of record on land instruments recorded in Macon County and the other Class members.

(#34, ¶¶ 144-45.) These paragraphs attempt to allege the elements of an unjust enrichment claim. First, they allege that Defendants benefited because (1) they were able to avoid paying recording fees (for intermediate transfers); (2) MERS retained a first-lien priority by virtue of the recording of the initial mortgage naming MERS as mortgagee and/or grantee; and (3) MERSCORP and MERS received membership fees, transaction fees, and other monetary benefits by allowing MERS members to use MERS. (#34, ¶¶ 141-43). Second, they allege that Plaintiffs suffered a detriment because the MERS system allowed MERS members to avoid paying recording fees and to retain a first-lien priority. (#34, ¶ 144.) And third, they allege that allowing Defendants to retain these benefits would be unjust. (#34, ¶ 145.)

There are several problems with these allegations. Plaintiffs assert that their unjust enrichment claim does not rely on a requirement to record assignments and concede that Illinois law merely "encourages" recording. (#34, ¶ 49.) The Court disagrees with Plaintiffs' characterization of the claim. It is clear from the language in the complaint that the unjust enrichment claim is premised on the notion that Defendants acted improperly by not recording intermediate assignments after initial mortgages were recorded. Therefore, Plaintiffs' unjust enrichment claim is necessarily based on a duty to record.[4] Accordingly, the Court will address

---

[4] Other courts, faced with similar claims, have reached similar conclusions. *See, e.g., Jackson County, Mo. v. MERSCORP, Inc.*, 915 F. Supp. 2d 1064, 1069 (W.D. Mo. 2013) ("Plaintiff's unjust enrichment is premised on the notion that Defendants acted improperly by not recording assignments after initial deeds of trust were recorded; therefore, Plaintiff's unjust enrichment claim necessarily is rooted in a duty to record."). For example, in *Plymouth County, Ia. ex rel. Raymond v. MERSCORP, Inc.*, 287 F.R.D. 449 (N.D. Iowa 2012), an Iowa district court dismissed a plaintiff's unjust enrichment claim in the plaintiff's first complaint on the grounds that it failed to allege any conduct that was unjust because there is no duty to record assignments under Iowa law. *Id.* at 453-54. The unjust enrichment claim was premised on the allegation that defendants recorded only the original mortgage, with MERS as the mortgagee, and then assigned the mortgage among defendants without recording those assignments. *Id.* The court subsequently found that the unjust enrichment claim in the proposed amended complaint was futile and did not warrant leave to amend because "the lack of subsequent assignments was not 'at the expense of' the County, unless recording of subsequent assignments, and payment of associated fees, was *required,* which it was not." *Id.* at 467. And in *Fuller v. Mortgage Elec.*

that issue first.

c.    **The statutory language**

Statute interpretation "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *United States v. Hagler*, 700 F.3d 1091, 1097 (7th Cir. 2012) (quoting *Dolan v. U.S. Postal Serv.,* 546 U.S. 481, 486 (2006)).

> In Illinois, the primary objective in statutory interpretation is to give effect to the intent of the legislature. Because the most reliable indicator of the legislature's intent is the language of the statute, the Illinois Supreme Court looks there first, applying the plain, ordinary, and popularly understood meanings of words. In addition to the language of the statute, the Court also considers the purpose behind the law and the evils sought to be remedied, as well as the consequences that would result from construing the law one way or the other. It assumes that the legislature did not intend absurdity, inconvenience or injustice and looks to legislative history if the need arises.

*Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 732 (7th Cir. 2010) (internal citations and quotation marks omitted). When considering an Illinois statute,[5] the Court's "duty is to interpret the Act as best we predict the Illinois Supreme Court would." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012).

Section 28 of the Conveyances Act provides as follows:

---

*Registration Sys., Inc.*, 888 F. Supp. 2d 1257 (M.D. Fla. 2012), *appeal dismissed* (Sept. 5, 2012), a Florida district court granted the defendant's motion to dismiss the plaintiff's unjust enrichment claim, reasoning as follows: (1) the plaintiff, the clerk of the court of Duval County, Florida, could not allege that he provided a benefit to MERS because MERS had no legal duty to file mortgage assignments; (2) the plaintiff could not allege that MERS failed to pay the recording fee for any mortgage or assignment that the plaintiff recorded; and (3) the plaintiff did not confer a benefit upon MERS by recording a mortgage because "[a]ny benefit from recording a mortgage . . . is derived from Florida law—i.e. priority of a lien—not from Plaintiff." *Id.* at 1275.

[5] In considering the meaning of Section 28 of the Illinois Conveyances Act (765 ILCS 5/28), the Court has relied on the discussion of the statute found in *Union County, Ill. v. MERSCORP, Inc.*, No. 12-665-GPM, 2013 WL 359366, at *5-8 (S.D. Ill. Jan. 30, 2013), which the Court finds to be persuasive.

10

> Deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated; but if such county is not organized, then in the county to which such unorganized county is attached for judicial purposes. No deed, mortgage, assignment of mortgage, or other instrument relating to or affecting the title to real estate in this State may include a provision prohibiting the recording of that instrument, and any such provision in an instrument signed after the effective date of this amendatory Act shall be void and of no force and effect.

765 ILCS 5/28. While the first sentence of the statute does use the mandatory "shall," the Court finds that, looking at the language of this statute as a whole, "it is clear . . . that section 28 relates to 'how such instruments shall be recorded,'" rather than establishing a blanket duty to record all such instruments. *Union County, Ill. v. MERSCORP, Inc.*, No. 12-665-GPM, 2013 WL 359366, at *8 (S.D. Ill. Jan. 30, 2013). Furthermore, the second sentence of the statute,[6] which prohibits any contractual agreement to avoid recording, would be redundant if the first sentence mandated recording all mortgages and other real estate instruments. This, too, is consistent with the Court's conclusion that the statute does not mandate recording.

Relevant case law supports the position that the statute does not create a mandatory duty to record. In particular, in *Field v. Ridgely*, 6 N.E. 156, 159 (Ill. 1886), the Illinois Supreme Court stated, "We are aware of no principle, outside of self-interest and prudence in business, that requires the holder of a mortgage to put it on record at any particular time." Similarly, in *Haas v. Sternbach*, 41 N.E. 51, 54 (Ill. 1894), the Supreme Court stated, "No one will contend that the recording of a mortgage is, in this State, necessary to its validity. Recording such instruments serves but one purpose, and that is to make them valid as against creditors and subsequent purchasers without notice." Both these Illinois Supreme Court cases thus confirm that recording a mortgage or other real estate instrument is not mandatory.[7]

---

[6] The second sentence was added in 1995.

[7] In a recent case, an Illinois circuit court concluded that, based on the use of the word "shall," the language of the recordation statute does, in fact, mandate recording. *See St. Clair County v. Mortgage Elec. Reg. Sys., Inc.*, No. 12-L-267, p. 6 (St. Clair Cnty., Ill., Cir. Ct. July 12, 2013) (order denying motion to dismiss). In support, the court stated that the two Supreme

11

Accordingly, based on the plain language of the statute as well as relevant case law, the Court concludes that the Illinois recordation statute does not mandate recording of a mortgage or other real estate instrument.

### d.    Plaintiffs' allegation of the elements

As noted above, Plaintiffs have alleged a number of benefits that Defendants received, including a monetary benefit based on Defendants having avoided paying recording fees for intermediate transfers; MERS's retention of a first-lien priority by virtue of the recording of the initial mortgage naming MERS as mortgagee; and receipt by MERSCORP and MERS of monetary benefits including membership fees and transaction fees.

As to the second element of an unjust enrichment claim, the Court concludes that the benefits to which the complaint refers did not occur at Plaintiffs' expense or to Plaintiffs' detriment.

First, Plaintiffs suffered no detriment based on Defendants' avoidance of fees. Because Plaintiffs provided no recording service for the intermediate transfers, Defendants owed Plaintiffs no recording fees for those transfers. *See, e.g.*, *Plymouth County, Ia. ex rel. Raymond v. MERSCORP, Inc.*, 287 F.R.D. 449, 467 (N.D. Iowa 2012) ("[T]he lack of recording of subsequent assignments was not 'at the expense of' the County, unless recording of subsequent assignments, and payment of associated fees, was *required,* which it was not."). It is clear from the allegations in the complaint that Plaintiffs did not provide any recording services related to the intermediate transfers. Therefore, Defendants did not "cheat" Plaintiffs of recording fees. As Defendants points out, Illinois law provides that a county clerk may assess a fee only "for his or her services in the office of recorder." 55 ILCS 5/3-5018; *see Crocker v. Finley*, 459 N.E.2d

---

Court cases mentioned above, *Field v. Ridgely*, 6 N.E. 156 (Ill. 1886), and *Haas v. Sternbach*, 41 N.E. 51 (Ill. 1894), did not apply to Section 28 and were limited to the effect of recordation on third parties under Section 30 of the Conveyances Act (765 ILCS 5/30). The Court disagrees with this statement. As Defendants point out, the Illinois Supreme Court in *Fielding* and *Haas* did not limit its conclusions to Section 30.

1346, 1349-50 (Ill. 1984) ("a fee . . . is regarded as compensation for the services rendered").

Second, the detriment that Plaintiffs purportedly suffered because MERS retained its first-lien priority is also not a detriment to Plaintiffs: MERS members paid recording fees for the recording of the initial mortgage in которой they named MERS as nominee. Thus, Defendants properly benefited from the first-lien priority. *See* Dan B. Dobbs, Remedies § 4.1(2) (1993) ("one who is enriched by what he is entitled to under a contract or otherwise is not unjustly enriched"). Furthermore, the benefit of recording a mortgage, i.e., priority of a lien, is derived from state law. A county does not confer any benefit upon one who records an assignment by the county's act of complying with statutory obligations, that is, recording a mortgage or assignment.[8] Therefore, Plaintiffs have not "conferred" any benefit on Defendants on the basis that Defendants retained a first-lien priority. *See, e.g., Fuller*, 888 F. Supp. 2d at 1275 ("Plaintiff has not conferred a benefit upon MERS by complying with his statutory obligations--recording a

---

[8] Plaintiffs may be contending that Defendants indirectly received a benefit from the State as a result of Macon County's recording of the first mortgage. (#41, p. 46.) When an indirect benefit is at issue, i.e., when a plaintiff is seeking recovery of a benefit that was transferred to the defendant by a third party, courts have found that retention of the benefit would be unjust where:
> (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant.

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (citations omitted). Clearly, none of those situations apply here. First, the State did not "mistakenly" give MERS priority; instead, the original mortgage was properly recorded and the recording fees paid. Second, Plaintiffs agree that Defendants had no duty to record the intermediate transfers, so Defendants did not obtain the benefit of the priority by wrongful conduct. Third, Plaintiffs have not shown any reason that they have a better claim than Defendants to recording fees for which no recordings were made. The Court notes that Plaintiffs stated in their brief that the County has a better claim to the fees that Defendants avoided paying "by virtue of their conspiracy to create and use MERS." (#41, p. 47.) But Plaintiffs do not explain why they have a better claim. The Court infers that Plaintiffs meant they had a better claim because Defendants should not have "avoided" paying the fees by creating MERS. But given Plaintiffs' repeated acknowledgment that Defendants had no duty to pay the fees, the simple statement that they had a better claim is inadequate to state a claim based on an indirect benefit.

13

mortgage. Plaintiff's recording task is merely ministerial and Plaintiff is without discretion in the matter. Any benefit from recording a mortgage, as MERS points out, is derived from [state] law– i.e.[,] priority of a lien--not from Plaintiff.").

Third, Plaintiffs allege that MERSCORP and MERS benefited by receiving membership fees, transaction fees, and other monetary benefits as a result of the MERS system. (#34, ¶ 143.) Clearly, these benefits were not conferred by Plaintiffs.

Because the complaint does not allege the second element of an unjust enrichment claim, the Court concludes that Plaintiffs have failed to state a claim. Nevertheless, the Court will also consider whether the complaint alleges the third element of an unjust enrichment claim – that Defendants' retention of the alleged benefits would be unjust.

Although Defendants have benefited from use of the MERS system, the Court does not accept Plaintiffs' legal conclusion that Defendants' conduct, which allegedly forms the basis for the unjust enrichment claim, was in any way wrongful. *See Papasan*, 478 U.S. at 286 (stating that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). In fact, in contradiction to the allegations of the claim, Plaintiffs have conceded the propriety of the conduct at issue. Plaintiffs have expressly abandoned any claim that Defendants have a duty under a statute, contract, or otherwise, to record a mortgage or assignment. Given that recording is a voluntary act, neither Defendants' intent to avoid paying recording fees nor their success at avoiding paying recording fees constitutes wrongful conduct. Furthermore, Plaintiffs have acknowledged that MERS has a valid first lien security interest in the mortgage by virtue of the initial recordation. (#34, ¶ 5, stating "By virtue of the initial recordation, MERS has a valid first lien security interest in the mortgage.") Therefore, MERS's retention of the priority conferred by the Illinois recording statute cannot be wrongful. Finally, the fact that MERSCORP and MERS received monetary benefits from MERS members for use of the MERS system is clearly not wrongful.

Defendants lawfully recorded and paid recording fees for the original mortgage, naming

MERS as nominee. At that time, first-lien priority attached to the recorded mortgage pursuant to state law. Defendants lawfully chose not to record intermediate transfers. Thus, they did not owe recording fees for those transfers. None of this conduct is wrongful so that it would be unjust for Defendants to retain the benefits they received by virtue of the MERS system. Accordingly, the Court recommends dismissing the unjust enrichment claim in Count I.

**2. Counts II: Civil Conspiracy**

To state a claim for civil conspiracy under Illinois law, a plaintiff must allege: (1) an agreement between at least two people for the purposes of accomplishing some unlawful purpose or some lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement." *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 824 (N.D. Ill. 1998). Moreover, a cause of action for civil conspiracy requires an underlying claim. *See Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 943 (7th Cir. 2001). The gist of a civil action for conspiracy is not the conspiracy itself, but the wrongful acts done in furtherance of the conspiracy. *Caplan v. Int'l Fid. Ins. Co.*, 902 F. Supp. 170, 175 (N.D. Ill. 1995). If the underlying claim is dismissed, then the conspiracy claim must also fail. *See Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 794 (N.D. Ill. 1997) (citing *Galinski v. Kessler*, 480 N.E.2d 1176, 1179 (Ill. App. Ct. 1985) (dismissing the plaintiff's claim for conspiracy because the underlying acts did not constitute a tort)).

In this suit, the conspiracy claim alleges that:

> [T]he Member Defendants, the Shareholder Defendants, and John Doe Defendants 1-100 . . . conspired to parlay the benefit of "perfecting" mortgages, which is accomplished by recordation, to represent that they had and were transferring good title to mortgages free and clear of any pledge, lien, encumbrance or security interest, through the mortgage securitization process without recording such assignments and paying the applicable recording fees due to Macon County.

(#34, ¶ 149.) Plaintiffs acknowledge that the tortious act underlying the civil conspiracy claim is unjust enrichment. (#41, p. 53.) The Court has concluded that the underlying unjust enrichment count fails to state a claim. Accordingly, the Court recommends dismissing Plaintiffs' claim for civil conspiracy.

### 3. Count III:  Declaratory Judgment

In Count III, Plaintiffs seek a declaration that Defendants, "by filing initial mortgages in the name of MERS and by virtue of the MERS System not recording subsequent transfers of the mortgages, wrongfully harmed the land records of Macon County."  (#34, ¶ 155.)

Plaintiffs' declaratory judgment claim is based on the premise that Defendants acted "wrongfully" when they decided not to record the transfers that occurred between MERS members.  This underlying premise is invalid.  Plaintiffs have repeatedly stated that "its claims are in no way dependent on the existence of some affirmative duty to record assignments, whether contractual, statutory, or otherwise."  (#41, p. 40.)  Because Defendants had no duty to record intermediate transfers, their decision to forego recording those transfers in the County records does not constitute "wrongful" conduct.  Accordingly, the Court recommends granting the motion to dismiss the declaratory judgment claim.

### 4. Count IV:  Request for Injunctive Relief

In Count III, Plaintiff Macon County seeks a court order requiring Defendants (1) to correct all recordings filed in Illinois in which MERS is identified as a "mortgagee," "grantee," "beneficiary," or nominee" on any mortgages, deeds of trust, and assignments or mortgages and deeds of trust, by recording and paying the recording fees for "corrective instruments that set forth the entire chain of title for each aforementioned instrument"; and (2) to record and pay for recording fees for all past, current, and future assignments of mortgages secured by real property in Illinois.  (#34, ¶¶ 157-58.)

Plaintiffs state in their brief that the injunctive relief count should not be dismissed because Plaintiffs have properly pled their unjust enrichment and civil conspiracy claims.  The Court disagrees and has recommended dismissing those charges.  Accordingly, the Court recommends dismissing the claim for injunctive relief.

### IV.  Summary

Plaintiffs are attempting to recover in this lawsuit for actions that are neither required nor

prohibited under the law as it exists today.  However,

> Plaintiff is asking the weakest branch of the federal government to resolve a question that is better suited for the [state] legislature.  In the words of a Florida court, this case involves "the rub between the expanding use of electronic technology to track real estate transactions and our familiar and venerable real property laws that has generated the heat that led to this [case] and to countless others nationally."  While the "rub" has indeed caused considerable friction, this Court – at least under present [state] law, lacks the power to add the necessary grease.

*Fuller*, 888 F. Supp. 2d at 1263.  The Illinois legislature has not yet provided a statutory remedy for Plaintiffs to recover fees for unfiled assignments.  Until such a change occurs, Plaintiffs have no right to seek recovery from MERS under the claims alleged in this case.

For the reasons stated above, the Court recommends that Defendants' Motion To Dismiss Plaintiffs' Amended Class Action Complaint **(#36)** be **GRANTED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen (14) days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object with constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 9th day of August, 2013.

_____s/DAVID G. BERNTHAL_____
UNITED STATES MAGISTRATE JUDGE